May it please the Court, my name is Ronald Dean. I represent the plaintiff-appellant Elizabeth Wilkerson. And I apologize for being unable to be more flexible with regard to appearing on Monday. You were plain flexible, we thank you. Thank you. I've read McClure perhaps a hundred times. There are three things that I find could be relevant here. I'm looking at page 1136, 84 Fed 3rd, 1136, the last sentence. The first thing is, in McClure, the — in order for the disability to be payable, it had to be solely due to an accident, as here. Under the Patterson test, the — in order for the disability not to be payable, it has to be solely due to a preexisting condition. As in McClure, if Mr. McClure's preexisting condition substantially contributed to his disability, in addition to the accident, it was excluded. Here, if the vasospasms, the vascular spasms, and the depression substantially contributed to the disability, then it is included because it's not solely due to the preexisting condition. If that's the Court's concern, I will be addressing substantially contributed in a moment. The second possibility is that the phrase preexisting substantially contributed is the — coincidentally, in the McClure case, it talks about the preexisting condition bars recovery when it's substantially contributed. That would not be the test in this case, because, again, in this case — I'm sorry, in McClure, it's a question of whether the accident was solely responsible for the disability, whereas here, the question is whether the preexisting condition is solely responsible. In order to measure solely, you look to whether there is something else that substantially contributes. In McClure, it was a question of whether the preexisting condition substantially contributed. Here, it's a question of whether the vasospasms and the depression substantially contributed. The third thing in the sentence is the discussion of Judge DeShima's decision in Henry v. Home, saying that the test is more favorable to the plaintiff if there — if the plaintiff's — if the language was inconsistent and with plaintiff's reasonable expectations. I mention it because I'm not sure how to make that fit into this case, but if there's a question, perhaps I can answer it. So we move on to what is substantially contribute. In my brief, I pointed out that it can't mean big. The analogy I used was I made a substantial contribution to my favorite charity. If I contributed $25, that's not a substantial contribution. For some, it would be. But it's still more than a trivial contribution. It's more than a remote contribution. It's more than a trace, infinitesimal, theoretical contribution. I looked at an ALR article, fairly recent, 84 ALR 2nd, 176. The title of the article is exactly the issue that was existent in McClure. It's called, Pre-existing Physical Condition as Affecting Liability Under Accident Policy or Accident Feature of Life Policy. It's about 151 pages long, as ALR articles tend to be, and I searched it hoping that there would be some definition of substantially contribute. The majority — the overwhelming majority, of course, hold consistently with McClure that in order for the pre-existing physical condition to substantially — has to substantially contribute before it's no longer solely due to an accident. I didn't find what I was looking for. However, I did find at least a half a dozen references to, quote, not remote. In the summary on page 4 of the article, it says the majority of courts hold that it has to substantially contribute to the disability and not be remote. So it is with the list of references on page 12 of my reply brief, where I try and draw from a variety of sources trying to define what substantiality means, and all of them — or, better put, none of them — refer to big or overwhelming or significant — rather, they refer to more than trivial or remote, more than a scintilla, Black's Law Dictionary referring to substantial evidence, more than a spark, a trace, infinitesimal or theoretical, not remote. Defendant Sunlight doesn't really disagree with this. It doesn't set forth any cases that say this is not the correct definition. So we get to the heart of my case. What did the trial court do that was so wrong? After all, the trial court used the word significant at one point. It said that Wilkerson's evidence of the vasospasms and the depression was not significant or substantial. Sounds right. The problem is it also used — it was not serious, it was not disabling, it was not incapacitating. To me — and I'm an advocate — a red light goes on. Well, wait a minute. Why is the court using these words? It's not quite eustem generis, but it's of that kind. As Black's Law Dictionary, eustem generis means the same kind or class. So listing a series of words, you come to conclude that the court is trying to — using different words to describe the same thing. There's no reason for it to be describing different things. So if we say that the trial court's use of significant and substantial is in the category of serious, disabling, and incapacitating, it would lead to the suspicion, if not a strong conclusion, that the trial court was applying the big test. To be substantial, it has to be big, not just trivial, remote, et cetera. What else leads to this conclusion? Well, a number of findings of fact that the court made. At reply brief pages 16 through 18, the trial court recites that there was significant problems with the vascular spasms, swollen foot, red spots. Court talks about how Wilkerson testified, uncontradicted, that she could no longer wear her special orthotic. It's kind of like a tall snow boot that comes up to the knee because of the vasospasms. It talks about the different problems with the depression and the issues and the seeing of Dr. LeMaitre and trying to keep working, trying to find an accommodation at work. So that significance, yes, the court might have said, these are all true, but I still find them to be trivial or remote. We'd say, well, maybe, but it's kind of a stretch, but that's within the discretion of the trial court. But the trial court, on the one hand, is using it substantial in context with bigger words, more significance, and on the other hand is talking about facts that would say this is more than trivial or remote. Third, the trial court had already ruled that Wilkerson suffers from vasospasms and depression. It's an odd word to use, that a person suffers from these things if they are merely trivial or remote. One does not suffer from a hangnail. One does not suffer from a slight cut, something trivial. Again, this would indicate that the trial court was using the wrong standard. In some, I've already pointed out, the trial court was using the wrong burden of proof, and the trial court was using the wrong, likely using the wrong de novo standard. It should be what is the trial court's opinion, not what a reasonable person in the position of Sun Life would think, and there's a strong likelihood the trial court failed to use the trivial or remote standard. If defendant had simply put in their policy that if a disability is caused or contributed to by a preexisting condition, it would have been clear, we wouldn't be here today, and the court wouldn't be trying to interpret what they meant. Thank you. Roberts. Thank you, counsel. Roberts. Good afternoon. May it please the Court, Russ Stedman of Barber and Rowland, LLP, for Appel East Sun Life Assurance Company of Canada. The appellant, Ms. Wilkerson, suffered from multiple sclerosis for over 20 years. Keep your voice up, please, so that I can hear you. The appellant suffered from multiple sclerosis for over 20 years. The district court then made certain findings, and those findings are not disputed on this appeal. Although Mr. Dean has attempted to go over some of the facts discussed by the court in its statement of decision, there's, in fact, no challenge for the findings of fact that are made by the court. And what that court found was that the multiple sclerosis condition was fully disabling. That means totally disabling. In and of itself, standing alone. The court also made other critical factual findings. One, the vasospasm and depression were not disabling. Two, they were not substantial and they were not significant factors. Those findings, which are not contested in this appeal, compel that the judgment be affirmed. The McClure decision is not as narrow as Mr. Dean would suggest. It does not say that the court must find that the preexisting condition is the sole cause of disability. In fact, what it says is that we're faced with plan language that excludes disability, quote, resulting directly and independently of all other causes from bodily injuries caused by accident. Where are you in the opinion? Sorry, I didn't mean to throw you off, but I was going to follow along with you. It is at page 1135, 84F3rd, 1135. Okay. That language is actually more restrictive than the plan language we have here. The plan language we have here says any disability due to a preexisting condition is not covered. That's more straightforward. It doesn't say anything about having to be independent or resulting directly from other causes. It has a due-to test. But what is important about McClure is that the Ninth Circuit adopted federal common law saying if that plan provision, if that restriction is conspicuous, then all we're going to look at is whether or not the preexisting condition was a substantial contributor. They said substantially contributed to the disability. That has already been found by the district court here. The finding that Ms. Wilkerson's disability resulted fully from multiple sclerosis ends this appeal. That is a matter of law. There can be no dispute, and in fact, it has not been contended in this case through the district court proceedings, in the briefing, or an oral argument here today, that the preexisting condition exclusion in the Sun Life policy is inconspicuous. And if the court looks at the excerpts of record at page 67 and the table of contents at page 41, the court can see that there are separate benefit provisions for long-term disability. There are separate exclusion sections. There are five categories under the exclusion section that are numbered, one of which is preexisting condition. The two controlling decisions in the Ninth Circuit on the question of conspicuous and inconspicuous were written by your missing colleague, Justice Nelson, and those are Babikian, which can be found at 63 F3rd 837, and Winters, which is found at 49 F3rd 550. Kagan. Have you cited in your briefs? I did not because we did not address McClure or the conspicuous and conspicuous  It wasn't raised on a field. The sites of Jamsheets. May we submit them afterwards? Yes. What you need to do is just give them to the clerk, and she will get those sites to us. We'll do so. Now, by contrast, the leading decision talked about in McClure, finding something to be inconspicuous, is the Saltarelli case. I'll give the site to the clerk. Saltarelli and the Henry case, which is also cited in McClure, turned on the fact that the limiting language, the exclusion, was not in a heading called exclusions. It wasn't in a benefit provision. It was in a definition section. So the court concluded it's not conspicuous enough that a reasonable plan participant would know it existed. But that didn't automatically result in the court deciding to give coverage. Instead, the court said, where it's inconspicuous, we now need to do a proximate cause analysis. The proximate cause analysis is also answered by the district court's findings in this case. The court found specifically, under conclusions of law, that vasospasm and depression were not significant, and they were not substantial. The two district court cases that deal with the McClure holding are Weiss, which is the northern district of California. That was decided in 2006. I'll give the clerk the citation. And Henry, which was ruled upon out of the central district before McClure, but which McClure adopted. And both of those cases looked to California law on proximate cause. And they didn't look at, is it trivial, is it remote? What they looked at, and particularly in Weiss, they looked at the California Supreme Court in the Garvey case. In Garvey, stated straight out at page 408, the reasonable expectations of the insurer and the insured cannot include an expectation of coverage in cases in which the efficient proximate cause of the loss is an activity expressly excluded under the policy. In other words, Ms. Wilkerson and any other participant that has suffered from a longstanding 20-year medical condition who has received treatment in the months leading up to her June 2000 coverage inception cannot expect to have long-term disability benefits for a resulting disability six months later. The jury instructions in California echo exactly this point. On the appeal, in the excerpts of record, there is a reference by Ms. Wilkerson. And it's in the, I don't have it handy, but she referenced the Californian jury instructions, section 430. And it is entitled, Causation Substantial Factor. And it reads, a substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than remote or trivial factor. It does not have to be the only cause of the harm. But then it concludes by saying, conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. That's exactly what we have here. The multiple sclerosis was totally disabling. When Ms. Wilkerson filed her initial claim, that was the condition her doctor cited. That was the condition that she reported in her letter to the company. That was the condition the company paid short-term disability benefits on. And that's the condition she relied on when she cashed those checks. The record's clear as to when depression and vasospasm were asserted, and it wasn't until far later. With respect to the argument that Patterson, Mongualuzo, that line of case should apply, it's a very simple distinction. Although Wilkerson's briefs say that the Ninth Circuit found language caused by, resulting from, and she would say therefore due to, is ambiguous. That's not what the court held. The court held that there was no definition of mental and nervous disorder. So if you didn't know what that condition was defined to be, you would look at the reasonable expectations of an insured. And in that circumstance, if a condition had physical cause or physical symptoms, you would give the benefit of the doubt to the insured, and you would give them coverage. It did not say that the words due to, caused by, resulting from, are ambiguous. I do want to point out that should the court for any reason decide that it is necessary to reverse, this needs to be remanded for determination of the any occupation period of coverage. The first two years of coverage is under an own occupation. That decision was never addressed by Sun Life or the district court. There's no evidence in the record as to what Ms. Wilkerson has been doing since 2001. She has an MBA, she has a JD. Dr. Lemaistre wrote at ER 90 that she was a candidate for eventual return to work in a different occupation. Dr. Langer-Gold reported at ER 123 that she might be able to return to work in two to three months. The benefit period here spans from age 42 potentially to age 65. Only the first two years are concerned with an own occupation standard. So if there were any reversal, we would need to have that decision determined and a proper record prepared. She might get the benefits, she might not. Admittedly, Ms. Wilkerson's situation is quite sympathetic. But that doesn't answer the legal issues or the contractual obligations of Sun Life. Ms. Wilkerson's employer chose to purchase a policy which had what is very common in the market, a pre-existing condition exclusion. That exclusion does not give participants the right of coverage for conditions that they have suffered from, obtained treatment for, and that subsequently result in a disability during the first 12 months of coverage. That's exactly what happened here. Thank you. Thank you, counsel. We'll give you two minutes for rebuttal. Thank you, your honors. With regard to the Patterson case, yes, it held that the mental nervous language was ambiguous. But it also said that causation was ambiguous. You can define mental nervous and say it includes the following conditions, but you still haven't said whether a mental or nervous condition has to be solely due to a mental nervous, and the long line of definition, 100 pages of definition, still won't tell you, unless the plan says caused or contributed to by a mental or nervous disorder, whether it has to be solely due to or partially due to, and that's what Patterson held. There were two ambiguities. Mr. Stedman addressed the first. The Court addressed two, and it's the second one that's relevant here. And remember, it was the Patterson court that said if Mr. Patterson's headaches are in any part, part of his disability, under any definition, it's not a mental or nervous disorder. So unless they included headaches in the definition, his is included. With regard to the California approved jury instructions, the portion of number 430, as we pointed out in our brief cited by Mr. Stedman, isn't applicable here. It's 431 that's applicable. 430 is only, is not applicable, as the note says, in cases of concurrent independent causes. Our job here is to find out whether the vasospasms and the depression are substantial contributors. If they are, then there are current causes, and therefore, that provision isn't applicable. What is applicable is the definition of substantial factor, which says remote anything other than a remote or trivial factor. The efficient proximate cause has always given me a headache, but I don't think it's applicable here. We're not talking about the Henry versus home issue. We're talking about the Ninth Circuit adoption in the absence of reasonable expectations of a substantial factor test, and that's what's applicable here. Thank you. Thank you both for your arguments. The case just heard will be submitted, and we will be in recess for the afternoon. And again, the Court thanks you for accommodating us in the change of schedule. We'll be in recess.
judges: Hall, Nelson, Thomas